**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                     Case No.  3:08-cr-291-J-32JRK

SHARICA EJUAN PRIESTER
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Defendant's Motion to Dismiss (Doc. No. 19;
"Motion"), filed October 15, 2008.  The Motion is opposed.  See United States' Response in
Opposition to Defendant's Motion to Dismiss (Doc. No. 25; "Opposition"), filed October 23,
2008.

In the Motion, Defendant seeks to dismiss several counts of a fourteen-count
indictment.  Motion at 1, 7.  Defendant essentially argues that she is being charged with two
different crimes containing "identical" elements, in violation of the Double Jeopardy Clause
of the Fifth Amendment to the United States Constitution ("Double Jeopardy Clause").  Id.
at 2.  The Government responds that Congress intended the crimes charged to be separate
offenses, and that the crimes charged contain different and distinct elements, thereby not
giving rise to a double jeopardy violation.  Opp. at 1-2, 6-7.  The undersigned must resolve
whether Defendant may be charged under both 18 U.S.C. § 1344 and 18 U.S.C. §§

---

[1]     The parties having agreed to a five (5) day objection period during oral argument on the
pending Motion, see Doc. No. 28 (Minute Entry), specific, written objections may be filed in accordance with 28
U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within five (5)
days after service of this document.  Failure to file timely objections shall bar the party from a de novo
determination by a district judge and from attacking factual allegations on appeal.

1029(a)(5), 1029(c)(1), and (c)(2)[2] for the same conduct. Because Sections 1344 and 1029(a)(5) each have different proof requirements, indicating an intent on the part of Congress to punish each crime separately, and because the respective legislative history behind each section does not indicate a contrary intent on the part of Congress, the undersigned concludes that the Double Jeopardy Clause is not violated and recommends denying the Motion.

I.    **Background**

On August 14, 2008, a federal grand jury returned a fourteen-count indictment against Defendant, charging her with Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts 1-5, 8-12; "Bank Fraud Counts"); Fraud and Related Activity in Connection with Access Devices, in violation of 18 U.S.C. § 1029(a)(5) (Counts 6, 13; "Access Device Fraud Counts"); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 7, 14; "Aggravated Identity Theft Counts"). See Indictment (Doc. No. 1) at 1-7. Defendant was arrested on August 19, 2008 and brought before the undersigned for an Initial Appearance on August 20, 2008. See Doc. No. 6 (Minute Entry). Defendant was arraigned on August 26, 2008 and entered a plea of not guilty. See Doc. No. 12 (Minute Entry).

On October 15, 2008, Defendant timely filed the instant Motion, as well as a Motion for Bill of Particulars (Doc. No. 20; "Motion for BOP"). Thereafter, at Defendant's status conference held on October 20, 2008, the instant Motion was referred to the undersigned for the issuance of a Report and Recommendation. See Doc. No. 22 (Minute Entry for

---

[2]    As Sections 1029(c)(1) and (c)(2) are the penalty provisions to Section 1029(a)(5), the sections will hereinafter be collectively referred to as "Section 1029(a)(5)."

Status Conference).  Upon review of the Motions, the undersigned directed the Government to respond to both Motions by October 29, 2008, <u>see</u> Order (Doc. No. 23), and upon review of the Government's responses (Doc. Nos. 24, 25), a hearing regarding these matters was set for November 3, 2008.  <u>See</u> Notice (Doc. No. 27).

At the hearing on November 3, 2008,[3] counsel for the Government made representations that appeared to render certain issues in Defendant's Motions moot.  The Motions were filed under the assumption that the Government plans to use the same evidence to prove all counts (evidence consisting of Defendant using credit cards bearing the misspelling of her own name, as well as names of other persons,[4] to obtain goods and/or money at multiple locations).  Under that assumption, Defendant originally argued in the instant Motion that because "the government has acknowledged that it cannot prove that the Defendant ever obtained, possessed, or used anything but the credit/debit cards alleged to have facilitated the commission of the offenses enumerated in the other Counts of the indictment[,]" the Aggravated Identity Theft Counts should be dismissed as violating double jeopardy principles, as well as the Rule of Lenity.  Motion at 4-7.

During the hearing, however, counsel for the Government indicated that to prove the Aggravated Identity Theft Counts, he intended to rely on evidence of Defendant using the credit cards to obtain goods and/or money, as well as additional circumstantial evidence. In the Government's view, the circumstantial evidence consists of the use of a telephone,

---

[3]     Defendant was excused from attending this proceeding because the hearing involved only a "question of law."  <u>See</u> Fed. R. Crim. P. 43(b)(3).

[4]     The Government's evidence includes credit cards issued in the names of "Mary Braddock", "Sherika Priestor", and "Isaac Johnson".  <u>See</u> Indictment at 3, 6.

the telephone line being subscribed to by Defendant, to call and apply for the cards that she later used for the transactions.  Additionally, the Government intends to show that the cards applied for were mailed to Defendant's address.  Given the Government's representations, defense counsel was directed to file a supplemental memorandum, by 5:00 on November 5, 2008, indicating whether he intended to proceed with the Motion for BOP and whether he sought to dismiss the Aggravated Identity Theft Counts in light of the representations made by the Government at the hearing.  <u>See</u> Doc. No. 28 (Minute Entry).

On November 5, 2008, Defendant filed Defendant's Notice of Withdrawal of Motion for Bill of Particulars (Doc. No. 29), as well as Defendant's Supplemental Argument in Support of Motion to Dismiss and to Deem Timely Filed (Doc. No. 30; "Supplement").[5] Although the Motion originally sought to dismiss the Bank Fraud Counts, as well as the Aggravated Identity Theft Counts, in the Supplement, Defendant indicates that she no longer seeks to dismiss the Aggravated Identity Theft Counts at this time.  <u>See</u> Supp. at 2. Defendant essentially seeks to reserve her right to argue at the close of the Government's case that the Aggravated Identity Theft Counts violate the <u>Blockburger</u> test and/or the Rule of Lenity, if the Government's proof of the Aggravated Identity Theft Counts consists of nothing more than the use of the credit cards.  <u>See</u> <u>id.</u>

On November 6, 2008, the undersigned entered an Order deeming Defendant's Motion for BOP withdrawn.  <u>See</u> Doc. No. 31 (Order).  Thus, the instant Motion is the only matter currently pending before the Court.  Given Defendant's acknowledgment in the

---

[5]     The Supplement was filed at 7:19 p.m. on November 5, 2008 due to "unanticipated delays experienced by counsel, in resolving a dispute on behalf of another client, which required immediate attention." Supp. at 2.  Given counsel's representations, the Supplement will be considered by the Court as timely filed.

Supplement, the undersigned addresses the Motion only as it seeks to dismiss the Bank Fraud Counts.

## II.    The Instant Motion

Defendant seeks to dismiss the Bank Fraud Counts pursuant to the Double Jeopardy Clause which provides ". . .nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"  U.S. Const. Amend. V.  Defendant contends that the elements required to prove the Bank Fraud Counts "are identical" to the elements necessary to prove the Access Device Fraud Counts.  Motion at 2, 5.  As such, Defendant contends that she is subject to a violation of multiple statutes consisting of the same elements, as well as multiple punishments for those violations, which is contrary to the Double Jeopardy Clause, as interpreted by Blockburger v. United States, 284 U.S. 299, 304-05 (1932).  Motion at 2, 5.

The Government asserts that Congress intended to create two separate offenses with respect to the crimes charged.  Opp. at 1-3.  According to the Government, only if "the Court [were to] determine[] that the Congressional intent was ambiguous as to its desire to create two distinct offenses," would the Court conduct an analysis in accordance with Blockburger.[6] See id. at 3.  The Government argues that, assuming a Blockburger analysis is necessary, the Blockburger test is satisfied and Defendant may be charged with both the Bank Fraud

---

[6]     The Government's Opposition seems to suggest that the Court first look to the legislative history to determine whether Congress intended to create separate offenses with respect to the crimes charged, relying on Garrett v. United States, 471 U.S. 773, 779 (1985).  See Opp. at 1-3.  Although the Government's Opposition appears to cite the legislative history only when comparing the Access Device Fraud Counts to the Aggravated Identity Theft Counts, see Opp. at 1-3, at the hearing, the Government advanced a similar framework in support of comparing the Bank Fraud Counts to the Access Device Fraud Counts. The undersigned, having examined the applicable case law, views it somewhat differently, in that a court should first attempt to determine the congressional intent from the language of the statutes involved.

Counts and the Access Device Fraud Counts without violating the Double Jeopardy Clause. Id. at 6-8.

## III.    Discussion

When the same conduct violates two statutory provisions, courts conduct an analysis in accordance with the Double Jeopardy Clause to determine whether the legislature "intended that each violation be a separate offense." Garrett v. United States, 471 U.S. 773, 778 (1985).  In conducting the double jeopardy analysis referenced in Garrett, a court first looks to the charged offenses and the statutes implicated by those charges.  If a clear indication of intent to create and punish separate offenses exists from reading the plain language of the statute, "our inquiry is at an end and the double jeopardy bar does not apply." Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996); see also United States v. Stewart, 65 F.3d 918, 928 (11th Cir. 1995)(indicating "when the relevant statutes on their face indicate a clear legislative intent to allow multiple punishments, we need not engage in a *Blockburger* analysis, because we must give effect to that legislative intent")(citing Garrett, 471 U.S. at 779; United States v. Albernaz, 450 U.S. 333, 340 (1981)).

If Congress's intent is unclear based upon the plain language of the statutes, a court should "apply the 'same elements' test established in Blockburger[.]" United States v. Smith, 532 F.3d 1125, 1128 (11th Cir. 2008).  After comparing the statutes in accordance with Blockburger, a court should examine the legislative history of the statutes.  See United States v. Luis-Gonzalez, 719 F.2d 1539, 1547 (11th Cir. 1983)(examining legislative history "as a means of discerning Congressional intent"); see also United States v. Nakashian, 820 F.2d 549, 551 (2d Cir. 1987).  "If the legislative history either reveals an intent to authorize

cumulation of punishments or is silent on the subject, the court should conclude that Congress intended to authorize multiple punishments." Nakashian, 820 F.2d at 551 (citing United States v. Marrale, 695 F.2d 658, 662 (2d Cir. 1982); Albernaz, 450 U.S. at 336-42). To that end, only if a contrary view is plainly expressed by Congress must the Blockburger test yield to that view. See United States v. Hassoun, 476 F.3d 1181, 1185 (11th Cir. 2007)(citing prior Eleventh Circuit precedent and indicating that "if other evidence, such as the legislative history of the relevant statutory provisions, contradicts the presumption [established by the Blockburger test], we are to respect Congress's express intent")(internal citations omitted); United States v. Moore, 43 F.3d 568, 573 (11th Cir. 1995)(indicating that the Blockburger rule "is not controlling when Congress clearly indicates, on the face of the statute or through legislative history, an intent to impose cumulative punishments")(citing Garrett, 471 U.S. at 779).

### A.     The Charged Violations

The Bank Fraud Counts charge Defendant with violating 18 U.S.C. § 1344, which provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice–

(1)     to defraud a financial institution; or

(2)     to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.  The Access Device Fraud Counts charge Defendant with violating 18

U.S.C. § 1029(a)(5), which provides:

> (a) Whoever–
>
> . . .
>
>> (5)     knowingly and with intent to defraud effects transactions, with 1 or more access devices issued to another person or persons, to receive payment or any other thing of value during any 1-year period the aggregate value of which is equal to or greater than $1,000;
>
> . . .
>
> shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection(c) of this section.

18 U.S.C. § 1029(a)(5).  In addition, the penalty provision of Section 1029(a)(5) provides:

> (c) Penalties–
>
> (1)     Generally.–The punishment for an offense under subsection (a) of this section is–
>
>> (A)     in the case of an offense that does not occur after a conviction for another offense under this section–
>> . . .
>>
>>> (ii)     If the offense is under paragraph . . . (5), . . . of subsection (a), a fine under this title or imprisonment for not more than 15 years, or both;
>
>> (B)     in the case of an offense that occurs after a conviction for another offense under this section, a fine under this title or imprisonment for not more than 20 years, or both; and
>
>> (C)     in either case, forfeiture to the United States of any personal property used or intended to be used to commit the offense.
>
> (2)     Forfeiture procedure.–The forfeiture of property under this section, including any seizure and disposition of the property and any related administrative and judicial proceeding, shall be governed by section 413

of the Controlled Substances Act, except for subsection (d) of that section.

18 U.S.C. § 1029(c)(1), (c)(2).

Because the offenses in this instance are charged under separate statutes which unambiguously authorize punishment for the respective violations, it can be inferred that Congress intended to punish them separately.  See Singletary, 78 F.3d at 1513.  Ordinarily, then, the analysis would be over.  See Smith, 532 F.3d at 1128; Singletary, 78 F.3d at 1513; Garrett, 471 U.S. at 779; Stewart, 65 F.3d at 928.  However, Defendant argues that a comparison of the statutes reveals that charging Defendant with violating both statutes as a result of the same conduct violates the Double Jeopardy Clause because the statutes contain the same elements.  Motion at 2,5.  Given Defendant's argument, the Court next sets out the elements of the Bank Fraud Counts and the Access Device Fraud Counts and compares them in accordance with Blockburger.  See Stewart, 65 F.3d at 928 (finding that the legislative intent to allow multiple punishments was clear from the face of the statutes, but nonetheless noting that the Blockburger test was satisfied).  Finally, in an abundance of caution, the legislative history is examined to determine whether there is a "plainly expressed" view by Congress that a defendant may not be charged with and convicted of both 18 U.S.C. § 1344 and 18 U.S.C. § 1029(a)(5).  See Garrett, 471 U.S. at 779; see also Hassoun, 476 F.3d at 1185; Moore, 43 F.3d at 573.

   **B.    Comparison of Crimes Under Blockburger**

Defendant contends that she cannot be charged with both the Bank Fraud Counts and the Access Device Fraud Counts because the elements of the Bank Fraud Counts "are identical" to the elements of the Access Device Fraud Counts, therefore subjecting

Defendant to a violation of multiple statutes consisting of the same elements.[7]  Motion at 2, 5.  "The Blockburger test is one of statutory interpretation in which we examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments."  United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008)(citing Albernaz, 450 U.S. at 337; Hassoun, 476 F.3d at 1185). By comparing the elements of the crimes charged, the Court must determine whether "each statute requires proof of an additional fact which the other does not[.]" Blockburger, 284 U.S. at 304.

> i.    **Elements of Bank Fraud Counts and Access Device Fraud Counts**

The Bank Fraud Counts charge Defendant with violating 18 U.S.C. § 1344.  The elements of a violation of Section 1344 are:

> First:  That the Defendant executed or attempted to execute a scheme [to defraud a financial institution] [to obtain money, assets, or property from a financial institution by means of false or fraudulent pretenses, representations, or promises relating to a material fact], as charged;
>
> Second:  That the Defendant did so willfully with an intent to defraud;
>
> Third:  That the false or fraudulent pretenses, representations, or promises were material; and
>
> Fourth:  That the financial institution was federally [insured] [chartered].

---

[7]    Defendant uses the term "multiplicitous" to support this argument, Motion at 2-4, but analyzes the issues by conducting a Blockburger comparison of the Bank Fraud Counts and the Access Device Fraud Counts.  See Motion at 3-4.  Indeed, the cases Defendant cites use the Blockburger test.  See Ball v. United States, 470 U.S. 856, 861-64 (1985); Rutledge v. United States, 517 U.S. 292, 297-300 (1996).  The Court recognizes that "[a]n indictment is multiplicitous if it charges a single offense in more than one count." United States v. Williams, 527 F.3d 1235, 1242 (11th Cir. 2008)(citing Ward v. United States, 694 F.2d 654, 660-61 (11th Cir. 1983); United States v. De La Torre, 634 F.2d 792, 794 (5th Cir. 1981)).  Defendant does not attempt to make the argument that the indictment is impermissibly multiplicitous with respect to each Bank Fraud Count charged (there being 10 total Bank Fraud Counts), so the Court does not address it.

Eleventh Circuit Pattern Jury Instructions, No. 52.

The Access Device Fraud Counts charge Defendant with violating 18 U.S.C. § 1029(a)(5).  The elements of a violation of Section 1029(a)(5) are:

First:      With [an access device] [access devices] issued to [another person] [other persons], the defendant knowingly effected transactions;

Second:  The defendant obtained through such transactions [at any time during a one year period beginning [_date_] and ending [_date_]] a total of at least $1,000 in payment[s] or [any other thing] [other things] of value;

Third:     The defendant acted with an intent to defraud; and

Fourth:   The defendant's conduct in some way affected commerce between one state and [an]other state[s], or between a state or the United States and a foreign country.

Ninth Circuit Manuel of Modern Jury Instructions, No. 8.72; cf. Eleventh Circuit Pattern Jury Instructions, No. 41.2 (pertaining to a violation of 18 U.S.C. § 1029(a)(2)).[8]

## ii.    Comparison of Elements

A comparison of the elements of the crimes charged indicates that the Double Jeopardy Clause is not violated because the Bank Fraud Counts and the Access Device Fraud Counts contain different and distinct elements.  The Bank Fraud Counts require proof of facts which the Access Device Fraud Counts do not in the following ways: (1) the

_____

    [8]      This instruction, in substance, was submitted in the Government's Response, although the Government indicated that the instruction was "adapted from the Eleventh Circuit pattern Jury Instruction No. 41.2 for a violation of 18 U.S.C. § 1029(a)(2)."  Opp. at 5 n.5.  The Government's adapted instruction is essentially the same as the Ninth Circuit Pattern Jury Instruction for a violation of Section 1029(a)(5).  Nevertheless, while the Eleventh Circuit's instruction for a violation of Section 1029(a)(2) is broken into three elements instead of four, it appears that if the Eleventh Circuit were to have an instruction for Section 1029(a)(5), it would be similar in substance to that of the Ninth Circuit instruction for a violation of Section 1029(a)(5).  Moreover, the essential elements of a violation of Section 1029(a)(5) are contained in the Ninth Circuit's Pattern Jury Instruction.

Government must prove that Defendant was involved in a scheme to defraud a financial institution or to obtain money, assets, or property from a financial institution by means of false or fraudulent pretenses (element 1); and (2) the Government must prove that the financial institution was federally insured or chartered (element 4).  With respect to the Access Device Fraud Counts, the Government must again prove additional elements which are not required to prove the Bank Fraud Counts.  Those elements being:  (1) the Government must prove that Defendant knowingly effected transactions with (an) access device(s) issued to (an)other person(s) (element 1); (2) the Government must prove that through those transactions, occurring during a one year period, Defendant obtained things of value or payments totaling at least $1000 (element 2); and (3) the Government must prove that Defendant's conduct in some way affected interstate commerce (element 4).  Accordingly, the Blockburger test is satisfied with respect to a comparison of the elements of the crimes charged.  See Blockburger, 284 U.S. at 304.

### C.    Legislative History

The respective legislative history of each statute involved serves to confirm the conclusion reached by the Blockburger analysis because it appears to be silent on the issue of punishment with respect to simultaneous violations of these statutes.  See Nakashian, 820 F.2d at 551.

Congress passed Section 1344 in response to Williams v. United States, 458 U.S. 279 (1982) and other decisions in line with Williams which "narrow[ed] the applicability of then-existing bank fraud statutes." United States v. Bonnett, 877 F.2d 1450, 1454 (10th Cir. 1989).  To that end, the Senate report indicates:

> Recent Supreme Court decisions have underscored the fact that serious gaps now exist in Federal jurisdiction over frauds against banks and other credit institutions which are organized or operated under Federal law or whose deposits are federally insured.  Clearly, there is a strong federal interest in protecting the financial integrity of these institutions, and the legislation in this part would assure a basis for federal prosecution of those who victimize these banks through fraudulent schemes.

S. Rep. No. 98-255, 98th Cong, 2d Sess. 377, reprinted in 1984 U.S.C.C.A.N. 3182, 3517.

Section 1344 was modeled after the mail and wire fraud statutes, see 18 U.S.C. §§ 1341, 1343, and, just as with those statutes, Congress intended Section 1344 to "be construed broadly." United States v. Hammen, 977 F.2d 379, 382 (7th Cir. 1992)(citing United States v. Solomonson, 908 F.2d 358, 364 (8th Cir. 1990)).  Given the legislative history of Section 1344, Congress intended to protect banks and other credit institutions whose deposits are federally insured or are chartered under federal law.

Conversely, Section 1029 was enacted to address "the growing problem in counterfeit credit cards and unauthorized use of account numbers or access codes to banking system accounts[.]" United States v. McNutt, 908 F.2d 561, 563 (10th Cir. 1990)(quoting H.R. Rep. 894, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3689).  Thus, it appears that in passing Section 1029, Congress sought to protect those affected by the unauthorized use of access devices, i.e., consumers, retailers, and banks.

The undersigned finds nothing in the legislative history that would indicate that Congress did not intend to punish Defendant's alleged conduct as two separate crimes. Indeed, while the legislative history serves to shed light on the reasons the statutes were passed, it appears silent on the issue of punishment.  Accordingly, it should be concluded that Congress intended to authorize multiple punishments. See Nakashian, 820 F.2d at 551.

Because there is no "plainly expressed" congressional view which is contrary to the Blockburger analysis, the indictment charging Defendant under both 18 U.S.C. §1344 and 18 U.S.C. § 1029(a)(5) does not violate the Double Jeopardy Clause.  See Garrett, 471 U.S. at 779; Hassoun, 476 F.3d at 1185; Moore, 43 F.3d at 573.

After due consideration, it is

**RECOMMENDED**:

That Defendant's Motion to Dismiss (Doc. No. 19) be **DENIED** as to the request to dismiss Counts 1-5, 8-12 (Bank Fraud Counts), and **DENIED without prejudice** as to the request to dismiss Counts 7, 14 (Aggravated Identity Theft Counts).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on November 25, 2008.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
The Honorable Timothy J. Corrigan
Counsel of Record